# Richmond

## BILLIE DANIEL LESUEUR v. DAVID AYRES, ADMINISTRATOR, ETC.

June 19, 1950.

Record No. 3628.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*John B. Boatwright*, for the plaintiff in error.

*A. Laurie Pitts, Jr.* and *John P. Flanagan*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Lorenza Ayres, plaintiff's intestate, was killed when a truck in which he was riding, owned by LeSueur and driven by Thomas, overturned. His administrator brought this action against LeSueur and Thomas, charging that the accident was due to the negligence of Thomas, servant of LeSueur, in operating the truck. He recovered a verdict and judgment against both defendants and this writ of

error was granted to LeSueur. Thomas, the driver, did not appeal.

LeSueur operated a feed store in the town of Dillwyn, Buckingham county, and made deliveries to some of his customers by truck. Thomas was employed by him to drive one of his trucks and to help with the loading and unloading. He had worked in that capacity for five or six months. Ayres was first employed on the day of the accident to help unload and deliver feed.

In the afternoon of December 30, 1948, Ayres was sent by LeSueur with Thomas to deliver feed to one of LeSueur's customers who lived a few miles from Dillwyn. Together they loaded the truck from a freight car and Thomas drove it to the home of the customer where they made delivery. On the way back, at a sharp curve in the road, they met an automobile, and in order to avoid a collision Thomas drove off the road and into a ditch, which was soft from recent rain. The truck ran in the ditch 94 feet and struck a stump which caused it to turn over on its side. Ayres fell, or was thrown, under the truck and was killed.

The evidence was clearly sufficient to support the finding that the accident was due to the negligence of Thomas in driving the truck. It was a two and one-half ton truck, eight feet wide and with a high body. The road, State Route No. 622, was 15 or 16 feet wide. The curve was sharp and Thomas was familiar with it. He knew that care was required properly to negotiate it. Yet, by his own admission, he approached it at 40 miles an hour, in the middle of the road, although he could not see the approaching car until his truck was at the point of the curve within about 20 steps of the car. The occupants of the car testified that the truck was running at 55 or 60 miles an hour; that it came around the curve entirely on their side and narrowly missed striking them as it swerved to its right and into the ditch. They had seen the truck coming and to get out of its way they had

pulled into the ditch on their side and as far off the hard surface as they could get. The accident happened shortly after five o'clock and both vehicles had lights on. The jury were fully warranted in finding that the death of Ayres was caused by the negligence of Thomas.

The main defense relied on here is that Ayres and Thomas were fellow servants and that hence LeSueur was not responsible for the negligence of Thomas. The court instructed the jury that if Thomas had control over the truck and the deliveries, then he was a vice-principal and LeSueur was liable.

Thomas was twenty-three years old; Ayres was eighteen. Thomas was, as stated, the driver of the truck, while Ayres did not drive. Ayres was employed by LeSueur as a helper and he and Thomas worked together in loading and unloading the truck. Thomas had nothing to do with employing him and had no right to discharge him. Both were to receive the same wages. Thomas gave Ayres no orders but they both received their orders from LeSueur. LeSueur testified that Thomas had no control or authority over Ayres, but on cross-examination he was asked, "Did Thomas have any direction or authority over Ayres, authority to tell Ayres what to do?" He replied, "Yes, sir." Plaintiff relies on that answer, together with evidence that Thomas had control of the truck and of the delivery, as sufficient to make Thomas a vice-principal of LeSueur, and to support the court's instruction.

In *Norfolk, etc., R. Co.* v. *Nuckols*, 91 Va. 193, 21 S. E. 342, Nuckols, who was a track hand, was struck and killed by a passing engine due to the negligence of the engineer in charge of the engine. Judgment for the plaintiff was reversed for refusal of the trial court to instruct that the decedent assumed the risk of injuries caused by the negligence of fellow servants, and that the engineer and Nuckols, the track hand, were fellow servants.

In the opinion Keith, President, speaking for the court, stated the origin and some of the history of the fellow

servant doctrine and the principles upon which it is founded. He reviewed former decisions of this court and found that the general doctrine had been fully and broadly accepted. He referred to the fact that the rule had been criticized and efforts made to limit and confine it, stating that "in some States, what is called the doctrine of 'superior and subordinate' has been recognized; in others, the 'separate department' doctrine has been adopted;" but he then quoted from *Northern Pacific R. Co.* v. *Hambly*, 154 U. S. 349, 14 S. Ct. 983, 38 L. ed. 1009, to the effect that the application of those qualifications "would result in frittering away the whole doctrine of fellow-service," and that courts have been reluctant to recognize those distinctions "unless the superiority of the person causing the injury was such as to put him rather in the category of principal than of agent—as, for example, the superintendent of a factory or railway— and the employments were so far different that, although paid by the same master, the two servants were brought no further in contact with each other than if they had been employed by different principals." 91 Va. at pp. 204-5, 21 S. E. at p. 346.

Judge Keith goes on to say: "It appears that the case of *Norfolk, etc., R. Co.* v. *Donnelly*, 88 Va. 853, 14 S. E. 692, repudiates the exceptions, and evinces a disposition to return to the simple terms of the rule stated by Chief Justice Shaw. It throws aside the doctrine of 'inferior and superior,' of gradations in employment, and of 'separate departments,' and states forcibly and clearly that 'all serving a common master, working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades or departments, are fellow-servants, and take the risk of each other's negligence.'" 91 Va. at p. 206, 21 S. E. at pp. 346-7.

He then states certain propositions as being fully warranted by the great weight of authority in this State and elsewhere, including this:

"The liability does not depend upon gradations in employment, unless the superiority of the person causing the injury was such as to put him in the category of principal or vice-principal." 91 Va. at p. 207, 21 S. E. at p. 347.

It clearly appears from the opinion that the words "principal or vice-principal" are meant to apply to those who represent the master in the performance of personal or non-assignable duties that he owes to his servant. This is emphasized and made clearer by the later case of *Norfolk, etc., R. Co.* v. *Houchins*, 95 Va. 398, 28 S. E. 578, 64 Am. St. Rep. 791, 46 L. R. A. 359, holding the brakeman on a train to be a fellow servant of the conductor by whose negligence he was killed. It is there again held that when a person enters employment he assumes the risk of the negligence of another in the same employment; and the mere fact that such other is a leader or boss to see to the execution of the work, "does not of itself place the one so put in authority in the category of principal or vice-principal; but the question remains whether or not the negligent servant was performing some duty which the master owed to the injured servant for his safety, and could not therefore delegate to another, which is a mixed question of law and fact, to be determined by the jury under proper instructions."

The opinion adds that the *Nuckols Case, supra*, "throws aside the doctrine of 'inferior and superior,' of gradations in employment, and of 'separate departments,' " and that the test in the case being decided was "not whether conductor Miller was, by the rules of the plaintiff in error, given authority over his train and of the employees on it, to direct and order them, but whether his negligent act, which resulted in the death of brakeman Houchins, was an act done when in the performance of a duty which the law devolved upon the plaintiff in error, and so one that is non-assignable, for which the master is still liable, or one of mere operation." 95 Va. at pp. 404-5, 28 S. E. at pp. 580-1.

The opinion states that it might be said that the "superior servant" rule originated in the case of *Chicago, etc., R. Co.*

v. *Ross*, 112 U. S. 377, 5 S. Ct. 184, 28 L. ed. 787, which had been overturned by the more recent decisions of that court, cited in the opinion, which are in accord with the *Donnelly* and *Nuckols Cases, supra,* and including *Alaska Min. Co.* v. *Whelan,* not then officially reported, but since reported in 168 U. S. 86, 18 S. Ct. 40, 42 L. ed. 390. In the later case of *New England R. Co.* v. *Conroy,* 175 U. S. 323, 20 S. Ct. 85, 44 L. ed. 181, the holding in the *Ross Case* that a conductor, merely from his position as such, was a vice-principal whose negligence is that of the company, was again disapproved, the opinion stating that it must be deemed to have been overruled in *Baltimore, etc., R. Co.* v. *Baugh,* 149 U. S. 368, 13 S. Ct. 914, 37 L. ed. 772, and adding, "we cannot, as a matter of law, based upon those facts and upon such common knowledge as we, as a court, can be supposed to possess, hold a conductor of a freight train to be a vice principal within any safe definition of that relation." 175 U. S. at p. 347, 44 L. ed. at p. 191.

In *Richmond Locomotive, etc., Works* v. *Ford,* 94 Va. 627, 27 S. E. 509, the plaintiff, about nineteen years old, was employed as one of a group of hands to do the heavy moving and lifting in defendant's shops and was injured by a wheel which got out of control. Fogg was leader, or foreman, of the group and directed them in their work. One of the questions was whether he was the representative or vice-principal of the defendant so as to cast liability upon it for his negligence. In holding that he was not, the court said (94 Va. at pp. 642-3, 27 S. E. at p. 511): "Conceding that the leader or boss of the gang of hands occupies a higher position than the other members of the gang, and that he had control of and power to direct, and did direct, the gang in their work, which had been directed to be done by the foreman of the machine shops, it is clear that he was a fellow servant with the other members of the gang. The mere fact that one servant is superior in authority to another does not have the effect of changing

his relation of fellow servant, unless his superiority places him in the category of vice-principal."

The court added that this sort of superiority of service is so essential and so universal that every workman in entering upon a contract of service must contemplate its being made in a proper case, and therefore makes his contract of service in contemplation of the risk of injury from the negligence of a boss or foreman, as well as from the negligence of another fellow workman.

To the same effect is *Moore Lime Co.* v. *Richardson,* 95 Va. 326, 333, 28 S. E. 334, 64 Am. St. Rep. 785.

The holdings in these cases have been approved in the later cases of *Norfolk, etc., R. Co.* v. *Phillips,* 100 Va. 362, 41 S. E. 726; *Trigg Co.* v. *Lindsay,* 101 Va. 193, 43 S. E. 349; *Southern Ry. Co.* v. *Smith,* 107 Va. 553, 59 S. E. 372; *Dreyfus & Co.* v. *Wooters,* 123 Va. 42, 96 S. E. 235; *Aronovitch* v. *Ayres,* 169 Va. 308, 320, 193 S. E. 524.

In *Reid* v. *Medley,* 118 Va. 462, 465, 87 S. E. 616, it was held that an instruction correctly stated the law to be that a foreman placed in authority and control over an injured servant was still his fellow servant unless performing a non-assignable duty of the master.

As stated in the *Nuckols Case, supra,* the fellow servant doctrine, along with the exceptions and limitations that have been attached to it, is a subject upon which there has been endless diversity of opinion. The volume and variety of the cases are illustrated by extended notes in 50 L. R. A. 417; 51 L. R. A. 513, appended to the case of *Stevens* v. *Chamberlin,* 1 Cir., 40 C. C. A. 421, 100 F. 378, 51 L. R. A. 513, reviewing the Supreme Court cases and applying the doctrine adopted in the Virginia cases; and 54 L. R. A. 33.

See also 56 C. J. S., Master and Servant, secs. 321, 327, 332, 332c, 332e, 333; 35 Am. Jur., Master and Servant, secs. 334, 353, 364, 365, 368, 372; *Baruch* v. *Sapp,* 178 F. (2d) 382, opinion by Judge Dobie, holding, in applying the law of Kansas, that "a foreman is the fellow-servant of

the workers under him save when he is performing a non-·delegable duty of the master;" and that a mechanic employed to service a plane was a fellow servant of the pilot, and for that reason the owner was relieved of liability for the death of the mechanic in a crash of the plane caused by the negligence of the pilot.

■ In the case in judgment there was no attempt to show that the truck was not in good order, or that Thomas was not a competent driver. The only negligence asserted and proved was that of Thomas in driving the truck. In that work he was not performing any personal or non-assignable duty of the master; his work was "one of mere operation," and the fact that he had charge of the truck and of the delivery, and authority to tell Ayres what to do in the execution of the work in which they were both engaged, did not, under our decisions, make him a vice-principal. He and Ayres were fellow servants, serving a common master, working under the same control, deriving authority and compensation from the same source and engaged in the same general business. Ayres, therefore, assumed the risk of the negligence of Thomas in driving the truck, and the defendant, their employer, is not liable for that negligence. *Norfolk, etc., R. Co.* v. *Houchins, supra*, 95 Va. at p. 405.

■ As said in the *Houchins Case*, the fellow servant doctrine as stated and applied in the former decisions of this court, and sustained by eminent authority, must be regarded as the settled law in this jurisdiction unless changed by the law-making power. It has been changed as to employees of railroads (Va. Const., sec. 162, Code, 1950, secs. 8-641 to 8-646), and those covered by the Workman's Compensation law (Code, 1950, secs. 65-1 ff.), but not otherwise, and as so written, it does not permit the recovery had by the plaintiff in this case.

The judgment below is, therefore, reversed and final judgment entered for the defendant, LeSueur.

*Reversed and final judgment.*